UNITED STATES *v.* FISHER SCIENTIFIC CO. (No. 4896) [1]
FISHER SCIENTIFIC CO. *v.* UNITED STATES (No. 4897)

United States Court of Customs and Patent Appeals, April 4, 1957

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Daniel I. Auster,* trial attorney, of counsel), for the United States.

*Jerome G. Clifford* (*George W. Israel* of counsel) for importer.

[Oral argument February 14, 1957, by Mr. Auster and Mr. Israel]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

---

[1] C. A. D. 648.

O'CONNELL, Judge, delivered the opinion of the court:

These cases involve cross-appeals from the judgment of the United States Customs Court, First Division, A. R. D. 68, which modified the decision of a single judge in a reappraisement proceeding. Reap. Dec. 8469. The merchandise comprises analytical balances and special magnifiers for use therewith which were exported from Switzerland during the period between April 1949 through March 1952. It is agreed that the proper basis for valuation is foreign value as defined in section 402(c) of the Tariff Act of 1930.

Section 402(c), as amended, provides as follows:

(c) Foreign Value—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The principal issue involved concerns the meaning of the term "usual wholesale quantities." The Appellate Division held that as to sales prior to November 1, 1951, the usual wholesale quantity in which the imported balances were sold was five or more, and that with respect to sales after that date, the importer had failed to establish what the usual wholesale quantity was, and that accordingly the values found by the appraiser should stand. With respect to the magnifiers the Appellate Division held that the evidence submitted by the importer consisted merely of conclusions and was insufficient to overcome the presumption that the appraised value was correct.

The Government in appeal No. 4896 has appealed from the first-mentioned holding, alleging that the usual wholesale quantity should have been fixed at one balance; while the importer in appeal No. 4897, has appealed from the other two holdings, alleging that as to balances sold on or after November 1, 1951, the usual wholesale quantity had been proved to be three or more balances; and that the evidence was sufficient to show that the appraised value of the magnifiers was incorrect and should have corresponded to their invoiced value.

The merchandise is identical with that involved in the case of *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513, and the record in that case was incorporated herein. In the incorporated case the record showed that the importer, Fisher Scientific Company, was the only manufacturer in Switzerland which freely offered for sale in that country merchandise of the kind here involved; and that that company sold the analytical balances at two different prices, one when they were ordered in lots of four or less and the other in lots of five or more. Evidence was offered as to thirteen

sales during the period between April 1948 and March 1949, three of the sales being in lots of five or more, one in a lot of two, and the remainder being sales of single balances. The sale of the lot of two balances and two of the sales of one balance were not in the ordinary course of trade.

In our decision in the incorporated case we held that in the ordinary course of trade there was only one wholesale quantity, namely, five or more balances and that it necessarily followed that such quantity was the usual wholesale quantity within the meaning of section 402(c).

The additional evidence in the instant case comprises affidavits by Hans H. Mettler, a director of the firm which manufactured the imported balances, to the effect that the practice described in the record of the incorporated case, which covered the period of exportation between April 1948 and March 1949, continued until November 1, 1951, after which it was modified to the extent that one rate was applied to lots of one or two balances and a lower rate to all lots of three or more. The affiant also stated that "the sales in quantities of three numerically exceeded and were more numerous than sales thereof in any other quantity."

Mettler also identified a list of sixty-one sales made between August 10, 1948 and July 19, 1950. Ten of the sales included in that list were also included among the thirteen above referred to in the record of the incorporated case. Of the sixty-one sales listed, fifty-six were of only one balance, and of those, twenty-five were not in the ordinary course of trade. The remaining five sales were of five or more balances each, in the ordinary course of trade, and were made on the following dates: August 10, 1948, September 20, 1948, June 7, 1949, October 6, 1949, and July 13, 1950. No sales of any kind after July 19, 1950 are listed.

We deem it proper at this point to reiterate the established rules which govern the importer's obligation in these proceedings with respect to its burden of proof. Section 2633, Title 28, U. S. C. provides for a two-fold responsibility: "The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise." This rule requires that the importer shall establish the usual wholesale quantities in which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of trade in the principal markets of the country from which exported. If the importer fails to establish such usual wholesale quantities, it has not met its burden of proof, and the valuation of the appraiser must stand. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495; *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341. The outcome of these

appeals under the cited authorities depends on whether the importer has submitted substantial and sufficient evidence to establish the usual wholesale quantities.

The single judge in the reappraisement initiated before him found that the sales included in the incorporated record, none of which were made during the period of exportation of the instant merchandise, were too remote to be considered. Disregarding those sales, and all others made prior to that period, as well as the sales not made in the usual course of trade, he found that there were twenty pertinent sales of which seventeen were of single balances and the remaining three of lots of five or more. From those facts, he concluded that the usual wholesale quantity must be taken as being one balance.

On appeal from the decision of the single judge, the Appellate Division of the Customs Court found that sales made prior to the period of importation of the instant merchandise were not too remote to be considered and that such sales, coupled with those within that period, reflected a market in which the usual wholesale quantities remained constant under the established course of trade. That court accordingly held that, as to all balances exported between April 1949 and October 31, 1951, the values claimed by the importer, based on lots of five or more, were proper. With respect to exports made after that date, the Appellate Division found that the importer had failed to establish, by proper evidence, a foreign value of the imported merchandise and that accordingly the values found by the appraiser should stand.

Relying upon the evidence of record and the authority of the incorporated case in support of its position, the Appellate Division thus made itself clear with respect to the 61 sales in issue:

Analysis of the 61 sales enumerated in the list supplied with the affidavit (exhibit 1, *supra*) shows that affiant divides the sales into 7 categories. Twenty-five of the sales were "not in the ordinary course of trade" and, therefore, are not material in determining statutory foreign value. Thirty-one of the sales were for one balance each, which, in the light of the decision of the appellate court in the *Fisher Scientific Company* case *supra*, incorporated herein, are retail transactions, and are not to be considered in finding the "usual wholesale quantities" under the statute, section 402 (c), as modified, *supra*. The remaining five sales were in quantities of five or more balances, which, under the *Fisher Scientific Company* case, *supra*, are "wholesale transactions" that "may properly be considered as entering into a determination of the usual wholesale quantities." Following the reasoning employed in the *Fisher Scientific Company* case, we find in this case, as the appellate court did in the incorporated case, that "there is here *only one wholesale quantity* in the ordinary course of trade, namely *5 or more* balances," and that "in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances." [Italics quoted.]

The Government challenges here as it did in the Appellate Division the validity and applicability of the finding and holding in the incorporated case as to the usual wholesale quantity of the merchandise in issue. The evidence adduced by both parties in the incorporated

case, which is pertinent here, was thus summarized by our court as the basis for the conclusion there which we expressed as follows:

Both the affidavit of Exhibit 1 and the report of Exhibit A clearly establish that in the ordinary course of trade there are, in the instant case, only two price categories, and that price varied only with the quantity purchased. *Any purchaser,* whether wholesaler, retailer or consumer, who bought in quantities of 1 to 4 paid according to the higher price schedule; but *any purchaser* who bought 5 or more balances paid according to the second price schedule, at a wholesale discount of approximately 25%. * * *

The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. Foreign value is not the price to wholesalers, but the price in the usual wholesale quantities. The law is not concerned with the persons who buy, but the manner in which they buy, *United States* v. *Richard & Co.*, 15 C. C. P. A. (Customs) 143, T. D. 42216. It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity*, in the ordinary course of trade, namely, *5 or more* balances. We think it necessarily follows, in view of the foregoing, that in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances [Italics quoted].

We are of the opinion that the Appellate Division correctly held that the usual wholesale quantity in which the balances here involved were sold between April 1949 and October 31, 1951 was five or more. The situation in that respect does not differ materially from that presented in the incorporated case, and our decision there is definitely pertinent here. As we there pointed out, the record indicates that there is only one wholesale quantity, namely, five or more balances, and that sales of less than that number are retail sales. We find nothing in the additional evidence here presented which convinces us that a different view should now be adopted. The fact that comparatively few sales were made at the wholesale price is not controlling. We agree with the Customs Court that, as regards wholesale quantity, the sales listed are sufficient to show a steady market, beginning prior to April 1949 and extending through October 31, 1951.

For the foregoing reasons, the judgment of the Appellate Division in appeal No. 4896 will be affirmed.

As above noted, the importer's appeal No. 4897, relates to the question of usual wholesale quantity on and after November 1, 1951, and to the appraisal of the magnifiers.

It is stated in one of Mettler's affidavits that a change in sales practice took place on November 1, 1951 and that after that date, balances were sold at one price in lots of three or more, and that sales in ordinary course of trade in quantities of three or more "numerically exceeded and were more numerous than sales thereof in any other quantity." As above noted, however, no evidence has been presented of any sale made after November 1, 1951. Under such circumstances, Mettler's statement presents nothing more than his conclusion and, as we held in *Brooks Paper Company* v. *United States, supra,*

such a conclusion does not constitute substantial evidence which would justify setting aside the appraiser's valuation. It is to be noted that, in the incorporated case, Mettler presented an affidavit containing the following statement:

Of all the sales made in the ordinary course of trade in the principal markets of Switzerland, in quantities of five or more of one model or assorted models, to any and all purchasers, that is to say, to purchasers who bought for their own use or consumption, those who purchased them to resell and any other purchaser, by actual count the sales in quantities of five Analytical Balances exceeded and were more numerous than the sales thereof in any other quantity.

In our decision in that case, we said that the quoted statement, standing alone, "would not be substantial evidence of the usual wholesale quantities sufficient to meet plaintiff's two-fold statutory burden of proof." For reasons similar to those there given, we conclude that Mettler's similar statement in the instant case is equally insufficient.

It is urged by the importer that Mettler's conclusion is supported by the lists of sales in the incorporated case and in the instant one, and that such evidence as to sales "is projected to September 2, 1953." Such projection, however, is effected merely by Mettler's conclusions, so far as the period after October 31, 1951, is concerned, since there is no specific evidence as to a single sale after that date.

In our decision in the incorporated case, we said:

* * * where the exporter of the imported merchandise is the sole producer of such merchandise, in the country from which exported, as in this case, we think the party challenging the appraised value in the first instance would be wise to at least present a *summary* of the relevant sales for the pertinent time period, so that the customs courts may be able to decide all relevant questions of law and fact in order to determine what is the *usual wholesale* quantity.

No such summary has been presented here. We are in agreement with the Appellate Division that the importer has failed to present such substantial evidence as to the usual wholesale quantity of the involved merchandise after October 31, 1951 as to justify setting aside the valuations of the appraiser on exports made after that date.

As regards the magnifiers here involved, the situation is similar to that presented with respect to the balances sold after October 31, 1951. No evidence of actual sales is presented, but merely statements of conclusions by Mettler. Both the single judge and the Appellate Division found such statements to be insufficient, and we agree with that finding.

The importer correctly points out in its brief that no issue is raised on these appeals either as to the Swiss Sales Tax or packing charges. Those points, which had been considered in the Appellate Division, therefore need not be discussed here, and the judgment of the United States Customs Court is for the reasons stated *affirmed*.

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.